## CYBUR LUMBER CO. v. ERKHART.

(Circuit Court of Appeals, Fifth Circuit. January 19, 1917. Rehearing Denied February 27, 1917.)

### No. 3010.

1. MASTER AND SERVANT ⊜⟳189(3)—INJURIES TO SERVANT—"FELLOW SERV-ANT"—FOREMAN—"VICE PRINCIPAL."

The foreman of a gang engaged in skidding logs out of the woods was a "fellow servant" of one of the members of the gang who was injured, and not a "vice principal" for whose negligence the employer was liable, where he was subject to the orders of a superintendent who was in charge of all the work in that neighborhood, though the latter had not been at the scene of the accident on the day it happened.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 431–435, 445; Dec. Dig. ⊜⟳189(3).

For other definitions, see Words and Phrases, First and Second Series, Fellow Servant; Vice Principal.]

2. MASTER AND SERVANT ⊜⟳107(5)—INJURIES TO SERVANT—SAFE PLACE TO WORK—CONDITIONS SUBSEQUENTLY ARISING.

Where the place originally selected by a foreman to set up a log skid-der was safe and the appliances were properly set up, but the place subsequently became unsafe when a small tree was broken off during the operations and the butt was left resting on the stump near a guy wire, the negligence of the foreman in not removing the tree was not within the general rule that the master's duty to make the place of work safe cannot be delegated, but was within the exception to that rule applying where the danger in the place of work arose during the course of the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 201; Dec. Dig. ⊜⟳107(5).]

In Error to the District Court of the United States for the Southern District of Mississippi; Henry C. Niles, Judge.

Action by Corbet Erkhart, by J. H. Erkhart, his next friend, against the Cybur Lumber Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

This is a writ of error to a judgment of the District Court for the Southern District of Mississippi in a case in which the defendant in error was plaintiff in an action to recover damages for a personal injury sustained by him, while in the employment of the plaintiff in error, which was a lumbering company. The District Judge refused to direct a verdict for the defendant, upon its request, and his refusal is the only error relied upon by the plaintiff in error to reverse the judgment against it.

The facts, which are not in serious controversy, are substantially as follows: Corbet Erkhart, defendant in error, was employed by the plaintiff in error as a "tonger," to assist in the operation of its skidder in pulling logs from the woods adjacent to its skidder. The skidder in question was a "ground skidder," which could be moved from place to place on slides resting on the ground. It was operated by a drum, around which was wound a steel cable, on the end of which cable were tongs, which tongs were taken out in the woods and fastened to the logs to be drawn in to the skidder by the revolutions of the drum. It was the duty of the plaintiff to take the tongs, attached to the end of the cable, from the skidder out into the woods and fasten same to the end of the logs that were to be drawn in. The skidder drew logs in on all sides from a radius of 900 feet by means of this cable attached to the drum on the skidder, which cable ran through a pulley or sheave attached

about 15 or 20 feet in height to a tree. Since the tree was forced to bear the great strain of pulling in the logs through the pulley attached thereto, it was necessary to brace the tree to which the pulley was attached, so that the tree would not be uprooted by the strain. This was done by means of a guy line running from the point on the tree to which the pulley was attached to another tree some 30 or 40 feet away, to which tree the guy line was fastened near the ground. Whenever it became necessary, in the course of the operations, to move the skidder to another scene, it was also necessary to remove the guy line from the tree or object to which it had been attached.

On the date of the accident complained of, a log was being pulled in from the woods by means of the cable and skidder. The log lay to the side, or not directly in front of, the skidder. The plaintiff attached the cable to the log, and it was taken on the "off side" (from the skidder) of a small bay tree, so that, when the cable was pulled by the drum, the little tree, being out of a straight line between the skidder and the log, was broken off about 10 feet high by the cable, the top of the little tree falling on the ground near to and parallel with the guy line of the skidder, but the butt of the little broken tree remained upon the stump, about 10 feet high, where it so remained until the crew prepared to move the skidder a short while afterward.

The testimony of the defendant in error, which is not disputed, was that he was sitting down near the skidder, while witness Batley and witness Gibson were endeavoring to unfasten the guy line of the skidder, which ran along beside, or in the direction of, the little broken tree; that witness Batley had unfastened the guy line at the stump of one tree; and that witness Gibson, up the other tree at the pulley, loosened the guy line there, called out, "Give me some slack," meaning for some one to slacken the guy line so as to facilitate his work up the tree. Plaintiff thereupon got up and walked over to pull on the guy line to give Gibson slack, when the little bay tree, which neither rested on the guy line nor was touched by any one, jumped off the stump, falling on plaintiff's leg, breaking same, and causing the injury complained of.

Gex & Waller, of Bay St. Louis, Miss., and J. C. Henriques, of New Orleans, La., for plaintiff in error.

O. F. Moss, of Lucedale, Miss., and Mize & Mize, of Gulfport, Miss., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). The plaintiff in the court below relied upon one ground of negligence only, namely, that the defendant was guilty of negligence in that it did not exercise reasonable care to furnish the plaintiff with a safe place in which to work. It was not contended that any part of the plant or appliances used by the defendant were defective. It was not contended that the place where the work was being performed by plaintiff and his fellow workmen was negligently unsafe, when the work was commenced on the morning of the day of the accident. The contention was that it became unsafe after the work was entered upon by reason of a tree having been broken during the progress of the work by one of the logs moved by the skidder, and having been left suspended from the trunk, at the point of the break, and lying parallel to a guy line used in the work, for an unreasonable length of time. The plaintiff and his fellow workmen had been directed by the leader of the gang, Clark, to prepare to move the skidder and to dismantle its rigging for that purpose. After giving this direction, Clark temporarily left the spot and was not present when the plaintiff sustained his injury. After he had

departed, Gibson, a fellow workman of plaintiff, who was up the tree to which the guy lines were fastened, asked the plaintiff, who was seated on the ground at one side, to give the guy line, along, but not upon, which the broken tree lay, slack so as to enable Gibson to unloose the wire from the erect tree up which he was. While the plaintiff was attempting to give slack to the guy wire, as requested by Gibson, the broken tree top fell on him, causing his injury. It may be assumed that the plaintiff was in the discharge of his duties when injured.

[1] It is clear that all of the workmen engaged with the skidder, including Clark, on the day of the accident, were fellow servants of the plaintiff, within the common-law rule of nonliability, which governs the relations of master and servant in Mississippi, except in case of railroad employés. The case of Moss v. Compress Co., 202 Fed. 657, 121 C. C. A. 67, is different from this case, in that in that case the servant, who was held to be a vice principal, was in complete charge of the work of dismantling a compress at a distance from the usual place of business of the defendant, with no one superior to him in the service at the place of work, and with complete control over the means and methods to be employed in the work of demolition. In this case, the evidence shows that the defendant had a superintendent in charge of its operations in the woods, under whom Clark was working and with authority to direct Clark in the means and methods of such operations. The work being done at the time of the accident was part of those operations. It is true that the superintendent was not at the place where the accident happened on the day it happened. It is, however, true that he was in charge of the department of work for the defendant in which the plaintiff was engaged when injured, and that Clark was subordinate to him in that department. It follows that Clark was not in charge of a department of the defendant's service in the sense that would constitute him a vice principal under the federal decisions. We think therefore that the nonliability of a master in Mississippi for the default of a fellow servant precludes a recovery by the plaintiff for the negligence of Clark in this case.

[2] It is contended, however, that the negligence of Clark was in not removing the fallen tree, after its fall and before the accident, and that, a reasonable time having elapsed between these events, Clark's failure constituted negligence in the matter of defendant's nondelegable duty of furnishing the plaintiff a reasonably safe place in which to do his work, and that the fellow-servant rule is no protection to defendant against such a breach of duty. This argument would prevail but for the conceded fact that Clark was guilty of no negligence in the original selection and equipment of the place of work, in the doing of which his acts were binding on the defendant, though he was a mere fellow servant of plaintiff; but, if at all, only in the failure to correct a condition that arose after the work had been entered upon, during its progress, and which was caused by the conduct of the workmen themselves or some of them. It is also true that no vice principal of the defendant was at the place of work, after the condition complained of arose, and saw or should have seen the danger in time to have remedied it before the plaintiff was hurt and negligently failed to do so; nor was there

238 F.—48

shown any negligent failure on the part of the defendant to exercise such supervision as was essential to due care. The facts in the record present the ordinary case of an employé, who has been originally furnished with a safe place in which to do his work by his master, injured by a defective condition which arose thereafter and which was created by the fellow servants of the injured employé during the progress of the work and as an incident thereto. It is well settled that an injury due to such a defective condition is caused by the negligence of a fellow servant with respect to a duty that is delegable by the master, and for which the master is not liable. In a case of this kind, the principle that the master is liable when the injury is due to the concurring negligence of himself and that of a fellow servant of the injured person does not obtain, since the negligence in this case was that solely of the fellow servant, and of a kind not legally attributable to the master.

In the case of Dunn v. Great Lakes Dredge & Dock Co., 161 Mich. 551, 126 N. W. 833, the court said:

"A master is under no duty to provide a safe place to work, where the dangers from the place of work arise from the changing conditions in the progress of the work."

In the case of Bennett v. Chrystal Carbonated Lime Co., 146 Mo. App. 565, 124 S. W. 608, the court said:

"Where the place in which a servant works is reasonably safe, and it is the particular work done that renders it unsafe, and the dangers are transitory and inherent in the manner in which the work is done, and the servant performs the work in his own way, the rule requiring a master to furnish a reasonably safe place does not obtain."

In Morgan v. Wabash R. Co., 158 Ill. App. 344, the court said:

The rule that a "master must use reasonable care to furnish a reasonably safe place for his servant to work * * * is * * * subject to * * * one universal exception, * * * that where the master has used reasonable diligence to provide a reasonably safe place for the servant to perform his work, and in the prosecution of that work changes are produced in the conditions of the place where the servant is required to work and these conditions are in the performance of the work for which the servant is employed and only temporary, the rule does not require the master to keep the place reasonably safe at all times under such changed conditions, and the rule has no application where the master does not make or create the conditions, but they are created by the progress of the work and the men engaged in it."

There are many other cases cited in the brief of plaintiff in error to the same effect. We regard the exception too well established to require the citation of further authority.

For the reasons assigned, we think a verdict should have been directed for the defendant upon the evidence in the record, and the judgment is for that reason reversed, and the cause remanded to be proceeded with in conformity with this opinion.